STROM INTERNATIONAL, LTD., Plaintiff-Appellant, *v.* SPAR WAREHOUSE AND DISTRIBUTORS, INC., Defendant-Appellee.

First District (5th Division)    No. 78-819

Opinion filed March 9, 1979.

Faber & Cunniff, Ltd., of Chicago, for appellant.

Berger, Newmark & Fenchel, of Chicago (Harry D. Lavery and Christopher J. Horvay, of counsel), for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiff filed a complaint against defendant-warehouseman claiming damaged and lost goods as a result of defendant's negligence. The trial court granted defendant's motion for a summary judgment. The sole issue on appeal is whether the trial court ruled correctly in granting the summary judgment. We affirm.

The record in this case includes the pleadings, exhibits, motions and attached affidavits. The record indicates that plaintiff stored certain goods, including liquor and furniture, with defendant-warehouseman. Defendant issued various warehouse receipts establishing the storage agreements between the parties. The receipts contained a provision in the lower right hand corner of the front page stating that:

> "This is to certify that we have received the goods listed hereon in apparent good order, except as noted hereon * * * subject to all terms and conditions herein *and on the reverse hereof*." (Emphasis added.)

This provision was in print smaller than the print on the rest of the front page. The reverse side of the receipts contained a provision under the heading "LIMITATION OF DAMAGES AND CLAIMS" that:

> "(b) Claims by the depositor must be presented in writing within a reasonable time, and in no event longer than 60 days after delivery of the goods. No action may be maintained by the depositor against the warehouseman for loss or damage to goods covered hereunder *unless commenced within nine months next after date of delivery by the warehouseman*." (Emphasis added.)

Sometime during the bailment, plaintiff discovered that goods which it stored with defendant were damaged. On approximately February 1, 1974, plaintiff's president, David Strom, complained to defendant about the damages. Upon receiving no satisfaction from defendant, he informally contacted the Illinois Department of Agriculture's Bureau of Warehouses (Department of Agriculture) to report the damages and to request an inspection. Lawrence Kaplan, of the Department of Agriculture, arranged for a meeting with Strom and defendant to inspect the stored goods. After the inspection, Kaplan reported the damaged goods to both parties.

On January 31, 1975, defendant delivered the last of the goods to plaintiff. Since he had not received any satisfaction up to this point, Strom filed a formal complaint with the Department of Agriculture on February 10, 1975. The complaint stated that goods were both damaged and lost.

Plaintiff then filed a complaint in the Circuit Court of Cook County on May 6, 1977. It claimed that its goods had been either lost or damaged through defendant's negligence and requested damages.

A supplemental record was filed four months before oral arguments in the present appeal. The record includes two letters which were apparently written by plaintiff's attorney, Irving Faber. One of the letters dated October 21, 1975, and addressed to Strom, stated that Faber had contacted defendant's agent, Phil Schiffman, but that he did not receive any satisfaction from him. The letter was unsigned, although Faber's name was typed at the bottom. The other letter, dated June 2, 1976, and

addressed to Schiffman, stated that as was discussed in a previous meeting between the parties, plaintiff intended to proceed through the Secretary of State's office or to have defendant buy certain of the goods and resell them to available markets. This letter was also unsigned, although Faber's name again was typed at the bottom of the letter. These letters became part of the record in this case.

OPINION

A trial court should grant a motion for summary judgment if the pleadings, depositions, admissions and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1975, ch. 110, par. 57. See *Manahan v. Daily News-Tribune* (1977), 50 Ill. App. 3d 9, 365 N.E.2d 1045.) In reviewing the trial court's determination, we must consider all grounds urged and all facts presented in the trial court. *Marshall v City of Chicago Heights* (1978), 59 Ill. App. 3d 986, 376 N.E.2d 657.

In its briefs, plaintiff argues that the trial court erred in granting the motion for summary judgment because the following material issues of fact existed: (1) Whether the nine-month claim limitation was reasonable; (2) whether the nine-month claim limitation was part of the agreement between plaintiff and defendant; and (3) whether defendant was estopped from asserting the nine-month limitation. This argument was not raised before the trial court and under the waiver rules we need not consider it. (*Witek v. Leisure Technology Midwest, Inc.* (1976), 39 Ill. App. 3d 637, 350 N.E.2d 242.) Nevertheless, we will comment on this argument after considering plaintiff's argument that the filing of the complaint with the Department of Agriculture tolled the operation of the nine-month limitation clause.

The sole argument which plaintiff urged before the trial court and also urges here on appeal is that its filing of a complaint with the Department of Agriculture tolled the operation of the nine-month limitation clause. According to the limitation clause, an action against defendant for loss or damage to goods covered by the storage agreement must be commenced within nine months after the date of delivery by the warehouseman. Defendant delivered the last of plaintiff's goods on January 31, 1975. On February 10, plaintiff filed its complaint with the Department of Agriculture. Plaintiff contends that by filing this complaint it was exhausting its administrative remedies.

The doctrine of exhaustion of administrative remedies applies to situations in which a party has been aggrieved by an administrative action. (*Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 359 N.E.2d 113; *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 326 N.E.2d 737.) It requires both that plaintiff has been aggrieved by

some administrative action and that there is an effective administrative remedy which would resolve plaintiff's problem. (*Northwestern University v. City of Evanston* (1978), 74 Ill. 2d 80, 383 N.E.2d 964.) In the present case, there are no facts which would indicate that: (1) plaintiff has been aggrieved by an administrative agency; (2) plaintiff was required to seek relief through the administrative agency before proceeding to court; and (3) there was an effective administrative remedy.

Plaintiff was aggrieved by defendant's failure to reimburse it for damaged and lost goods. An action was voluntarily filed by plaintiff with the Department of Agriculture and an inspection was conducted. Although the agency reported the damages it found to both parties, plaintiff has not stated any facts indicating that it was aggrieved by this administrative action.

■■ Plaintiff was not required either by statute or by the terms of the limitation clause to pursue administrative remedies before proceeding to court. However, even if required to pursue administrative remedies, there are no facts indicating that the Department of Agriculture was authorized to provide the remedy which plaintiff seeks. The statutory provision cited by plaintiff (Ill. Rev. Stat. 1975, ch. 127, par. 40.23) did not go into effect until October 1, 1975, which was more than seven months after plaintiff filed its complaint with the Department of Agriculture. At the time of filing, the Department of Agriculture was not authorized by statute to provide the remedy which plaintiff sought. Absent such authority, the Department of Agriculture could not provide the remedy sought. *Department of Public Aid v. Brazziel* (1978), 61 Ill. App. 3d 168, 377 N.E.2d 1119.

Furthermore, even assuming that somehow plaintiff's filing of a complaint with the Department of Agriculture tolled the limitation clause, we note that plaintiff did not file the present suit until 18 months after the nine-month limitation had run out. We think that it would be unfair to allow plaintiff to proceed after such a lack of diligence. Therefore, for the reasons stated we reject plaintiff's sole argument.

We next consider the argument which plaintiff waived by failing to raise it at the trial level.

Although plaintiff recognizes the provision of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1975, ch. 26, par. 1—101 *et seq.*), which permits parties to a storage agreement to include reasonable time limitations for bringing suit in the warehouse receipts (par. 7—204(3)), it contends that the question of "reasonableness" is always a question of fact. As support for that contention, plaintiff refers us to section 1—204(2) of the UCC (par. 1—204(2)) which provides:

"(2) What is a reasonable time for taking any action depends on

the nature, purpose and circumstances of such action." (Ill. Rev. Stat. 1975, ch. 26, par. 1—204(2).)

If, as plaintiff contends, the question of reasonableness is always a question of fact, then the trial court erred in granting the motion for a summary judgment because a genuine issue of a material fact existed.

Although no Illinois decision deals with the precise argument raised here, other jurisdictions have decided questions involving a determination of whether "reasonableness" is always a question of fact. In *Lish v. Compton* (Utah 1976), 547 P.2d 223, the Supreme Court of Utah had to determine whether the meaning of "reasonable time" was a question of law in order to decide whether a contract existed for the sale of a wheat crop. In *Lish*, the court noted that:

"The meaning of the phrase 'within a reasonable time' is necessarily somewhat flexible, depending upon the particular circumstances; and thus is *usually* a question of fact. But it is also true that, just as with all questions of fact, if the elapsed time was outside the ambit which fair-minded persons could conclude to be reasonable, then the issue *should be ruled upon as a matter of law*." (547 P.2d 223, 226-27.) (Emphasis added.)

In *White Devon Farm v. Stahl* (1976), 389 N.Y.S. 2d 724, 88 Misc. 2d 961, a New York trial court had to determine whether the inspection and rejection of a horse was timely in order to decide whether a contract for the sale of a horse could be rescinded. In making its determination, the trial court noted:

"Where, as here, the facts are not substantially in dispute, the question of what is a reasonable time *must be resolved by the Court as a matter of law*." (389 N.Y.S. 2d 724, 727-28, 88 Misc. 2d 961, 965.) (Emphasis added.)

Using these decisions as a guide here, we note that the record does not disclose any dispute on the question of whether the nine month limitation clause was reasonable. As mentioned previously, plaintiff did not urge this ground before the trial court and there are no facts in the pleadings, exhibits, or motions and attached affidavits which would create an inference of such a dispute. Therefore, it would appear that plaintiff would have us recognize a dispute solely because the nine month limitation is shorter than the normally applicable statute of limitations. This we cannot do.

We note that the comment to the Illinois Uniform Commercial Code, section 7—204(3) (Ill. Ann. Stat., ch. 26, par. 7—204(3), Council Commentary, at 36-37 (Smith-Hurd 1974)) states that provisions as to time of institution of actions are common to warehouse receipts. Thus, we do not believe that plaintiff can complain of surprise in this instance. Also,

we note that time limitations in warehouse receipts for filing claims within 30 days after written notice of losses is mailed have been held to be valid. (*United States Fidelity & Guaranty Co. v. Mooney's Moving & Storage, Inc.* (1958), 16 Pa. D. & C. 2d 668.) We see nothing in the nature of the goods stored in this case which would require a longer period for filing claims than was provided in the warehouse receipts.

■■ Therefore, since there was no dispute of facts on the question of reasonableness in this case, the question of reasonableness was properly a question of law.

Plaintiff next contends that a genuine issue of material fact exists as to whether the location of the limitation clause in the receipts provided sufficient notice. Plaintiff argues that it did not and, thus, did not become part of the agreement between the parties. In support of its argument, plaintiff relies upon the case of *Birmingham Television Corp. v. Water Works* (1974), 292 Ala. 147, 290 So. 2d 636.

The *Birmingham* case involved the question of whether the location of a nine-month limitation provision on the reverse side of a warehouse receipt, with no indication on the front side that anything was contained on the reverse side, provided plaintiff with sufficient notice of the limitation. Plaintiff filed suit about three months after the nine-month period had run out. In reversing the trial court's granting of a summary judgment, the Alabama Supreme Court held:

> "[W]e cannot say that as a matter of law appellant accepted the terms and conditions on the reverse side of the warehouse receipt as part of the contract of bailment. At the very least, it appears to be a question of fact for the jury as to whether or not appellant had actual notice, or under the circumstances should be charged with notice, of the terms and conditions on the reverse side of the warehouse receipt, most notably the requirement that suit be brought within nine months rather than the usual six years." 292 Ala. 147, 154, 290 So. 2d 636, 642.

The *Birmingham* case is distinguishable from the present case. The warehouse receipt in this case did provide notice of the contract terms contained on the reverse side. The notice, albeit in print smaller than that of the rest of the print on the front page, stated that the goods would be stored subject to all terms and conditions on the front *and reverse* side of the receipt. The limitation clause was located on the reverse side under the boldface print, "LIMITATION OF DAMAGES AND CLAIMS." Also, in this case, plaintiff has acknowledged from its first filing that the warehouse receipts established the storage agreements between the parties. There never was any issue raised or facts stated before the trial court which would indicate that plaintiff was not given sufficient notice of the limitation clause. Thus, it was undisputed.

■ Furthermore, we have not found any case law which indicates that notice of a limitation clause in a warehouse receipt must be in any larger print than the print used in the present case. In *Sanfisket, Inc. v. Atlantic Cold Storage Corp.* (Fla. App. 1977), 347 So. 2d 647, a Florida District Court of Appeal stated that under Florida's version of section 7—204(2) (Fla. Stat. Ann. §677.7—204(2) (West 1966)), there was no requirement that a limitation of damages clause be conspicuous. We believe the same to be true with regard to time-limitation clauses or notification of time-limitation clauses. Plaintiff is charged with the knowledge of the industry that time-limitation clauses are common in warehouse receipts. In light of the fact that the front side of the receipt referred plaintiff to the reverse side where the limitation clause was located, we cannot say that plaintiff was not provided sufficient notice. Therefore, no issue of fact existed on the question of notice.

Plaintiff's last contention is that there is a genuine issue of fact as to whether defendant's conduct requires that the limitation clause be found inapplicable either on a theory of estoppel or waiver.

■■ ■ Estoppel applies if: (1) defendant has made some misrepresentation or concealment of a material fact; (2) defendant had knowledge, either actual or implied, that the representations were untrue at the time they were made; (3) plaintiff was unaware of the untruth of the representations both at the time made and the time they were acted upon; (4) defendant either intended or expected his representations or conduct to be acted upon; (5) plaintiff did in fact rely upon or act upon the representations or conduct; and (6) plaintiff has acted on the basis of the representations or conduct such that he would be prejudiced if defendant is not estopped. (*Stewart v. O'Bryan* (1977), 50 Ill. App. 3d 108, 365 N.E.2d 1019.) Waiver applies if defendant's conduct indicates that it is intentionally relinquishing a known right. (*Tibbs v. Great Central Insurance Co.* (1978), 57 Ill. App. 3d 866, 373 N.E.2d 492.) If there is no dispute in the material facts of a case and only one inference is possible, the question of whether the facts prove estoppel or waiver becomes a question of law. *Pantle v. Industrial Com.* (1975), 61 Ill. 2d 365, 335 N.E.2d 491.

■ In the present case, the question of estoppel or waiver was a question of law. Although plaintiff refers to certain "facts" in its brief which might lead to a finding that either a theory grounds of estoppel or waiver is applicable here, none of these so-called facts appear in the record of this case. Nowhere in the record are there facts which might raise the possibility of an estoppel or waiver situation. Plaintiff has filed a supplemental record in this case to support "facts already stated in the Record on Appeal," however, the letters contained in the supplemental record do not support the contention that a theory of estoppel or waiver should apply here. There are no facts which would indicate that

defendant made any representation or concealment or that defendant waived the limitation clause. Therefore, absent any dispute over the material facts, the question of the existence of estoppel or waiver in the present case was a question of law.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

LORENZ and MEJDA, JJ., concur.