**Sheldon GLASSMAN and Gloria Glassman, Plaintiffs,**

v.

**TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY, Defendant.**

No. 84 C 10608.

United States District Court,
N.D. Illinois, E.D.

Nunc Pro Tunc March 21, 1986.

As Reissued June 27, 1986.

John F. McClure, Richard C. Gering, Arnstein, Gluck, Lehr, Barron & Milligan, Chicago, Ill., for plaintiffs.

J. Robert Geiman, Diana B. Van Dervort, David J. Novotny, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendant.

## MEMORANDUM

LEIGHTON, Senior District Judge.

This is a suit brought by an insured and his wife under a disability benefits policy to recover for the refusal to pay disability benefits. Defendant answered, raising four affirmative defenses: (1) that the amount in controversy is less than the jurisdictional amount, (2) that Gloria Glassman, the insured's wife, is an improper party plaintiff, (3) that the insured's disability does not fall within the accidental injury provisions of the policy and (4) that plaintiffs' claims are barred by estoppel. Plaintiffs move for partial summary judgment as to defendant's third affirmative defense; the material facts are not in dispute.

### I

### A

On November 6, 1979, the insured, Sheldon Glassman underwent triple coronary bypass surgery at St. Joseph's Hospital in Chicago; it was uneventful. However, shortly thereafter, he suffered several grand mal seizures. When he regained consciousness, he was totally disabled due to brain damage. He was then in his early forties.

Six years earlier, defendant had issued a disability income policy to Glassman. It provided for payment of monthly income benefits of $1500 upon proof of total disability. Under the policy, benefits were payable for the disabled insured's lifetime if the disability results from an "injury" as defined in the policy. However, if the disability results from a "sickness", benefits were payable only up to a maximum period of five years. Defendant ceased paying monthly benefits to plaintiffs after five years, contending that Glassman had suffered a "sickness" rather than an "injury."

These terms are defined in the policy as follows:

"Injury" means only bodily injuries which result independently of all other causes from an accident ...

"Sickness" means only (1) a sickness which first manifests itself after the date of issue of this policy and while this policy is in force or (2) a sickness which recurs after the date of issue of this policy and while this policy is in force and results from a previous disease or physical condition which is shown on the application for this policy and has not been excluded from coverage ...

In addition, the following exception appears in the policy, and is the basis for defendant's third affirmative defense:

A disability resulting from bodily or mental infirmity, or from medical or surgical treatment of a sickness ... will be considered a disability resulting from sickness and not from injury.

Plaintiffs argue that Glassman's disability falls within the accidental injury coverage, asserting that under Illinois law, accidental injury provisions are construed to provide coverage whenever the harm happens without design, producing an unforeseen result. In support of their motion, plaintiffs attach deposition testimony of Glassman's doctors, indicating he had no pre-existing neurological condition and that the risk of such injury occurring due to the heart surgery was remote. Plaintiffs claim Glassman's brain damage was not a foreseeable, natural result of his post-operative care.

Next, they argue that Glassman's disability is not excluded under the policy. They contend that since they have demonstrated the existence of coverage, the burden shifts to defendant to show that Glassman falls within an exception in the policy. According to plaintiffs, any ambiguity in the exclusion provision must be construed in their favor. They assert defendant must affirmatively show that the harm results from an excluded cause, and that it cannot

do so because the only event that contributed, with certainty, to Glassman's disability, was the failure to bring his seizures under control. They claim that a failure of medical treatment such as this cannot fall within the exclusion relied on by defendant. Further, they contend that even if the failure to control the seizures amounts to "medical or surgical treatment," the treatment was not directed to a sickness, but rather an injury, that is, whatever produced the seizures. Plaintiffs argue that the "resulting from" language must be interpreted as excluding only those disabilities that are the direct result of treatment, and not unexpected results caused by an intervening injury such as this. Finally, they contend that defendant did not draft the exclusion provision in broad terms, thus mandating a narrow interpretation by this court.

Defendant, on the other hand, argues that plaintiffs have not shown the seizures were an independent, intervening cause of Glassman's disability so as to constitute an accidental injury under the policy. It relies on deposition testimony from one of Glassman's surgeons stating it was likely that arteriosclerotic debris broke off from the aorta and travelled to Glassman's brain. Thus, according to defendant, the disability was not independent of Glassman's overall diseased condition.

Further, it claims Glassman's disability cannot be considered accidental. First, it argues the result could be foreseen in that the risks of coronary bypass surgery, including stroke with resulting brain damage, were explained to plaintiffs and cites deposition testimony from Glassman's surgeon. Second, it contends no accidental means have been shown as Glassman's surgery was without incident.

As to whether Glassman's disability resulted from "medical or surgical treatment of a sickness", defendant argues because plaintiffs brought this motion, they must show defendant cannot satisfy these elements. It contends plaintiffs' distinctions between medical treatment and the "failure" of medical treatment are without merit. Next, it asserts plaintiffs have failed to produce evidence to show that Glassman's disability was caused by the seizures alone, and argues that even if the seizures contributed to the brain damage, this is insufficient to consider them an independent cause. Finally, defendant contends that the seizures were, at best, a concurring cause of Glassman's disability. According to defendant, the court must then look to the dominant cause, which it contends was Glassman's overall diseased condition.

### B

Summary judgment is appropriate where the only dispute concerns the legal effect of language in an insurance policy. *See e.g., Edison v. Reliable Life Ins. Co.,* 664 F.2d 1130, 1131 (9th Cir.1981). At the outset, the court notes that in Illinois, "accidental means" has been held to be synonymous with "accidental result", and is defined as "something which happens by chance or fortuitously, without intention or design and which is unexpected, unusual, and unforeseen". *Taylor v. John Hancock Mutual Life Ins. Co.,* 11 Ill.2d 227, 230, 142 N.E.2d 5, 6 (1957). The test for foreseeability is an objective one, that which "any man with ordinary intelligence and prudence ... could have reasonably foreseen". *Marsh v. Metropolitan Life Ins. Co.,* 70 Ill.App.3d 790, 792, 27 Ill.Dec. 158, 160, 388 N.E.2d 1121, 1123 (2d Dist.1979) (quoting *Cory v. Woodmen Accident Co.,* 333 Ill. 175, 182, 164 N.E. 159, 162 (1928)).

This court concludes that Glassman's disability must be regarded as accidental. First, Illinois courts no longer distinguish between accidental means and accidental results.[1] The surgery undergone by Glassman was uneventful and although the risks of stroke were explained to plain-

---

1. The court can only regard *Body v. United Ins. Co. of America,* 72 Ill.App.3d 594, 28 Ill.Dec. 820, 391 N.E.2d 19 (1st Dist.1979), cited by defendant, as an anomaly. The *Body* court based its decision on a distinction between accidental means and accidental results, a distinction clearly rejected by the Illinois Supreme Court over twenty years ago in *Taylor, supra.*

tiffs, it is undisputed that Glassman did not suffer a stroke. Thus the brain damage cannot be considered a reasonably foreseeable consequence of the surgery.

As to whether his disability resulted independently of all other causes, as the court in *Marsh* stated, "we are not required to search beyond the immediate proximate cause to find a cause more remote". *Id.* 70 Ill.App.3d at 794, 388 N.E.2d at 1125; *see also Russell v. Metropolitan Life Ins. Co.*, 108 Ill.App.3d 417, 419, 64 Ill.Dec. 160, 161, 439 N.E.2d 89, 90 (4th Dist.1982). The immediate cause of Glassman's brain damage was the seizure episode. His underlying arteriosclerotic vascular disease, can, at best, be considered a remote cause. The seizures were independent from Glassman's surgery and the court need not go beyond this cause to find a cause more remote. Accordingly, the court concludes that Glassman's brain damage constituted an "injury" under the policy.

The question remains whether his disability is excluded by the exception, "resulting from the medical or surgical treatment of a sickness". The court notes first that under Rule 56, once plaintiff shows it is entitled to summary judgment, the burden is on defendant to show it has an arguable and substantial defense. *First Nat'l Bank Co. v. Insurance Co. of North America*, 606 F.2d 760, 767 (7th Cir.1979). In terms of general rules of construction, Illinois courts favor liberal interpretation of insurance provisions in favor of the insured, especially those clauses in which an insurer seeks to limit its liability. *See e.g., State Farm Mutual Ins. Co. v. Schmitt*, 94 Ill. App.3d 1062, 1063, 50 Ill.Dec. 493, 419 N.E.2d 601 (1st Dist.1981). Exclusionary provisions are to be applied only where their terms are clear and definite. *Id.* Where the language is subject to different interpretations, any ambiguity must be con-

strued in favor of the insured. *Dora Twp. v. Indiana Ins. Co.*, 78 Ill.2d 376, 379, 36 Ill.Dec. 341, 342, 400 N.E.2d 921, 922 (1980).

■ This court holds that Glassman's disability does not fall within the exclusionary clause. Evidence submitted by plaintiffs indicates that the cause of his brain damage was unrelated to his surgery. It is undisputed that did not suffer a stroke, the only neurological risk identified with the surgery. Thus, his disability did not "result from" his surgical treatment. Defendant has provided no rebuttal evidence; defendant has not shown that Glassman's disability resulted from an excluded cause. There is simply no link shown between Glassman's surgical treatment and his subsequent brain damage. Where, as here, the disability is not shown to "result from" medical or surgical treatment, the very narrow language of the exception before us precludes its application.[2] Therefore, it is the court's judgment that the exclusionary clause does not apply to the facts of this case. Accordingly, plaintiffs' motion for partial summary judgment is granted as to defendant's third affirmative defense.

## II

### A

Plaintiffs now move for summary judgment as to defendant's first, second, and fourth affirmative defenses. In the first affirmative defense, defendant asserts that the amount in controversy is less than the required jurisdictional sum. In the second, it argues that Gloria Glassman, the insured's wife, is an improper party plaintiff. In the fourth, it contends that plaintiffs' claims are barred by the doctrine of estoppel.

Defendant bases its estoppel defense on certain correspondence between the par-

---

**2.** This narrow language is what distinguishes the case at bar from *Reid v. Aetna Life Ins. Co.*, 440 F.Supp. 1182 (S.D.Ill.1977), relied on by defendant. The exclusionary clause in *Reid* applied to any injury "caused or contributed to by, or as a consequence of, ... medical or surgical

treatment." Thus, Reid's death from the accidental administration of a drug solution during his recuperation from surgery was found to be a "consequence of medical treatment" under that policy.

ties. In 1980, defendant began paying benefits to Glassman under the policy. In 1982, it received a letter from David Lubitsch, who identified himself as Glassman's agent and inquired whether defendant classified Glassman's disability as an accident or sickness. Defendant responded, stating that based on the medical information in its file, benefits were being paid under the sickness provision and that if Glassman felt this classification was incorrect, he should submit additional medical documentation. No further correspondence was exchanged between the parties until 1984, when defendant advised Glassman by letter that the policy provided a maximum benefit of five years for any sickness, thus the policy would cease in 1985. Glassman's attorney responded to this letter, contending that benefits were payable under the policy's "injury" provisions; defendant asserted that the "sickness" provision applied.

In support of their motion for summary judgment as to the jurisdictional defense, plaintiffs admit that no unpaid benefits had accrued at the time suit was filed. However, they contend that the amount in controversy is met by the relief sought under Ill.Rev.Stat. ch. 73, § 767, which, at the time suit was filed, permitted recovery for vexatious delay including reasonable attorney fees and a $5,000 penalty. According to this analysis, the statutory penalty accounts for $5,000 of the requisite $10,000 jurisdictional amount, and the remaining $5,000 consists of reasonably anticipated attorney fees (40 hours at $125 per hour).

Next, plaintiffs argue that the inclusion of Gloria Glassman as a party plaintiff is not fatal to their claim. They have agreed to limit their motion for summary judgment to seek relief as to plaintiff Sheldon Glassman only, but insist that regardless of whether Gloria Glassman is a proper party, this does not shield defendant from liability towards the insured, Sheldon Glassman.

In regard to the estoppel argument, plaintiffs contend the correspondence between the parties does not establish the elements of an estoppel defense. They claim defendant has not shown that it relied on any conduct of plaintiffs or that it was prejudiced in any way. They assert defendant did not rely on any conduct by plaintiffs when it determined that Glassman's disability resulted from "sickness" rather than "injury". Moreover, they argue defendant did not change its position in any way, since it was required to make payments under the policy for the first five years regardless of whether it construed the disability as an injury or a sickness. Finally, they contend no prejudice to defendant has been shown; defendant continued to assert that Glassman's disability constituted a sickness even after it received all the medical data in the pleadings before this court.

In its memorandum in opposition, defendant contends first that plaintiffs have failed to meet their burden of demonstrating that the jurisdictional amount exists. Defendant claims they have provided no documentary support for their assertion that 40 hours of attorney time was expended prior to the commencement of this suit, implicitly asserting that the attorney fees must have accrued prior to the institution of suit in order to be used to meet the jurisdictional amount.

Next, defendant argues that its policy lists only Sheldon Glassman as the insured and that under the terms of the policy, payments are made only to the insured. Thus, defendant argues Gloria Glassman is not a party to the contract of insurance and it was error to name her as a plaintiff. Because plaintiffs have limited their motion for summary judgment to seek relief as to Sheldon Glassman only, defendant insists Gloria Glassman must be stricken as a party plaintiff.

As to the estoppel theory, defendant claims that the existence of this defense is a question of fact that cannot be resolved on a motion for summary judgment. It contends plaintiffs' conduct in failing to challenge defendant's determination in 1982 that Glassman's disability was a sickness was consistent with an acceptance of

**6**

the sickness determination. Thus, defendant concludes plaintiffs are now estopped from asserting a claim to "injury" benefits. Moreover, it argues that it was forced to rely on the medical information it had in 1982, since plaintiffs never provided any further medical data. Defendant asserts plaintiffs' failure to provide this information led it to reaffirm its decision that his disability constituted a sickness, prejudicing it in that now it must respond to this suit.

**B**

■ Defendant's jurisdictional defense can be disposed of summarily. It has been held in this circuit that where a litigant has a statutory right to attorney fees if he prevails in the litigation, a reasonable estimate of the fees can be included in determining whether the jurisdictional amount is met. *Ross v. Inter-Ocean Ins. Co.*, 693 F.2d 659, 661 (7th Cir.1982). Plaintiffs have made a claim under Ill.Rev.Stat. ch. 73, § 767, which provides for reasonable attorney fees. They have provided an estimate of the time spent by their attorneys in this litigation and this estimate can be included in the jurisdictional amount. Thus, the estimated attorney fees of $5,000 added to the $5,000 penalty provided under the statute make up the requisite $10,000 jurisdictional amount. Accordingly, the court concludes that defendant's argument that plaintiff has failed to meet the jurisdictional amount is without merit.

■ Defendant's second affirmative defense fares no better.[3] Plaintiffs correctly note that regardless of whether Gloria Glassman is a proper party plaintiff, this defense does not shield defendant from liability to the insured, Sheldon Glassman.

■ As to defendant's estoppel theory, although the question of estoppel usually is a question of fact, where there is no dispute in the material facts of a case and only one inference is possible, estoppel be-

comes a question of law. *See e.g., Ehret Co. v. Eaton, Yale, & Towne Inc.*, 523 F.2d 280, 283 (7th Cir.1975), *cert. denied*, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 186 (1976); *Strom International Ltd. v. Spar Warehouse & Distributors Inc.*, 69 Ill. App.3d 696, 703, 26 Ill.Dec. 484, 489, 388 N.E.2d 108, 113 (1st Dist.1979). Estoppel arises only when a party's statement or conduct misleads another into the belief that a right will not be enforced and causes him to act to his detriment in reliance on that belief. *See Old Security Life Ins. Co. v. Continental Ill. Nat'l Bank*, 740 F.2d 1384, 1393 (7th Cir.1984). Reliance on the conduct of another to one's detriment is an essential element of estoppel. *Id.*

■ In the case at bar, defendant has come forth with no evidence demonstrating that it relied to its detriment on plaintiffs' inaction in 1982, when it first classified Glassman's disability as a sickness. Even assuming defendant relied on plaintiffs' failure to challenge its 1982 determination, its reliance did not cause it to take any action to its detriment. Defendant was obligated to make payments under the policy until 1985 regardless of whether it classified Glassman's disability as a sickness or an injury. Indeed, the argument that defendant would have acted differently at all is belied by its continued contention in this court that Glassman's disability constituted a sickness, even after it had obtained further medical evidence. The court therefore concludes that defendant has failed to demonstrate it acted to its detriment in reliance on plaintiffs' conduct, thus, as a matter of law, its affirmative defense of estoppel must fail. Accordingly, plaintiffs' motion for summary judgment as to defendant's first, second, and fourth affirmative defenses is granted.

So ordered.

---

**3.** This court granted plaintiffs' motion for voluntary dismissal as to plaintiff Gloria Glassman    on 4/4/86.